IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MATTHEW J. O'CONNER, ) | Case No.: 3:05-0107 CR (RRB) |
| ) | |
| Defendant. ) | |
| _____) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant, Matthew J. O'Conner, by and through counsel, Robert M. Herz, of the Law Offices of Robert Herz, P.C. hereby files the attached sentencing memorandum to aid the court in sentencing.

Mr. O'Connor maintains his objections to use of information included in paragraphs 63, 64, 66, 68, 70, and 74 and in using some of that information in calculating the criminal history category for establishing the advisory guideline sentence which can and likely will have an effect within the context of the Bureau of Prisons.

As noted in the pre-sentence report the events of June 11 and 12, 2003 involved a party in an apartment on Roosevelt drive in Anchorage. PSR at 2. At that party GHB was distributed by a number of people to a number of people. Mr. O'Connor, J.O. and M.M. were all planning on drinking that evening. M.M., the decedent in this case, had left her parents a note claiming she was going camping with friends. PSR at 4. The note indicated she would return the following afternoon. Of course this was not true, as M.M. know she was proceeding to Anchorage to party with her boyfriend, J.O. When Mr. O'Connor, J.O. and M.M. arrived at the party, there was no alcohol but some people still wanted to "party." According to the PSR, Lusk stated that he had some GHB and it would make everyone feel

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

drunk. PSR at 5. Mr. O'Connor had never taken GHB before and neither had J.O. or M.M. None of them knew of the possible fatal effects of GHB.

The pre-sentence report specifically notes:

> While GHB and GHB analogues . . . are commonly referred to as the "date rape drug" [there is] *no evidence* throughout all of the investigative reports, interviews, testimony, and autopsy results of the victim to indicate that the possession, distribution, and consumption of GHB in this case *had anything to do with sex*. It appears that the GHB was introduced and distributed only as a substitute for alcohol consumption so that individuals who wanted to experience the effects of intoxication or other drug induced euphoria could do so by *voluntarily ingesting* the GHB. [A]ll reports suggest that *none of the individuals were forced to ingest the drug, and all four individuals that knowingly consumed the GHB did so voluntarily.*

See PSR at 5 n.6 (emphasis supplied).[1] As noted by J.B. the only sober person there that night, she saw M.M., J.O. and Mr. O'Connor drinking from a cup; *"and they said that they had mixed GHB with some orange juice."* PSR at 5. J.B. stated in an interview that when she saw J.O and M.M with Mr. O'Connor in the back bedroom, J.O. and M.M. already appeared under the influence of something. She saw Mr. O'Connor pass the cup to J.O. who passed it to M.M.; she passed it back to J.O who took another sip and he passed it to M.M. again. J.B. never saw Mr. O'Connor pass the cup directly to M.M. As previously stated by Mr. O'Connor on a number of occasions, he had mixed the GHB with orange juice in a cup. He passed the cup to his brother. Mr. O'Connor never saw M.M. drink from the cup but assumed his brother had shared it with her.

As the government notes Mr. O'Connor is a young man and he agrees with the government that he absolutely had no idea that his brother would get very sick, that he himself

---

[1] Investigative reports also indicated that M.M. had "rolled" on ecstasy the previous weekend. M.M.'s prior use of drugs was verified by J.O. as well as J.B. who was a friend and had attended school with M.M. This information corroborates and explains M.M.'s apparent willingness to experiment with GHB on the night in question.

would nearly die and that a sixteen year old girl would die. He could not appreciate the consequences of his actions in taking the drug or in giving the drug to someone else, since he had no idea what the possible consequences were. No one did. They were all told by Lusk not to worry, it would just make them feel drunk. Even after people starting getting sick, no one summoned help as early as they could have or should have, because no one understood or knew of the danger, except perhaps Lusk. Lusk knew people had become ill from taking the drug before. Lusk kept telling them not to worry, that after sleeping it off it will be like having a bad hangover. PSR at 6. And in fact, for approximately four (4) hours, M.M. was observed to be sleeping it off and not in distress. J.O. went to sleep on the floor next to the couch where M.M. was sleeping. The time was about 6:00 a.m. and she was still breathing soundly and sleeping. Sometime in the next three hours or so she died. That is the tragedy of this case. Mr. O'Connor would never have knowingly put his brother, or a sixteen year old girl at such risk. She is now dead; a consequence for which Mr. O'Connor feels the utmost remorse. And he now must spend the next ten years in prison.

Ten years is not an inconsequential amount of time. It is fair and reasonable under the circumstances. As the investigative reports and interviews demonstrated and the government concedes, there is no evidence in this case that Mr. O'Connor was selling this drug or any drug for profit or otherwise. As noted previously, and as the government concedes Mr. O'Connor did not administer this drug surreptitiously, M.M. knew she was taking a controlled substance and she took it voluntarily. And as the government concedes Mr. O'Connor never intended to harm M.M. in anyway. As the government noted, Mr. O'Connor "certainly would not have given the drug to his own brother, his brother's girlfriend, or taken it himself if he had known the consequences." In addition, Mr. O'Connor nearly died the same night as M.M.

This near death experience, changed Mr. O'Connor. As noted in the pre-sentence report in a number of places, and as testified to by his parents in earlier hearings, this was a

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

life changing experience for Mr. O'Connor. Since that night, he has been clean and sober. He has stayed out of trouble. He has held down a number of steady jobs. He has enjoyed renewed relationships with his mother and father and his siblings. His family and his girlfriend of two years continue to support him today. He appears to have "turned his life around." PSR at 19. Mr. O'Connor never lied about what happened that night, or about his involvement. He did not tamper with witnesses or evidence as some people did. He accepted responsibility for his actions. These factors as well as others noted by the government in its sentencing memorandum provide ample support for the court abiding by the parties plea agreement to impose 121 months of prison.

Mr. O'Connor has no ability to pay a fine, something not disputed by the government. The government agreed on December 12, 2005 that it would not recommend more than 3 years of supervised release and this was made part of the plea agreement and stated in the colloquy with the court on January 11, 2006. See attached letters filed under seal.

Mr. O'Connor respectfully requests that court recommend to BOP that he be placed at a facility in Sheridan, Oregon so that he can be close to family, and that he be placed in the 500-hour drug and alcohol program (RDAP) so that he can continue to reinforce and learn those things to lead a productive, stable and sober life-style. These requests the government agreed it would not oppose.

For the reasons articulated herein, and based on the facts recited in the PSR, and by the government in its sentencing memorandum, the sentence agreed to by the parties is fair and reasonable, meets the requirements of Title 18, United States Code, Section 3553(a) and should be adopted and imposed by the court in this case.

/ / /

/ / /

/ / /

/ / /

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

Respectfully submitted and dated at Anchorage, Alaska, this 8th day of May 2006.

        THE LAW OFFICES OF ROBERT HERZ, PC

        s/ Robert M. Herz
        425 G. Street, Suite 600
        Anchorage, Alaska 99501
        Phone 907-277-7171
        Fax 907-277-0281
        rmherz@gci.net
        AK Bar No. 8706023

Law Offices of Robert Herz, P.C.
425 G Street, Suite 600 • Anchorage, AK 99501
Phone 907-277-7171 • Fax 907-277-0281
E-mail rmherz@gci.net

**CERTIFICATE OF SERVICE**
I hereby certify that on Mary 8th, 2006, a copy of the foregoing Non-Opposed Motion was served electronically on Assistant United States Attorney Crandon Randall    s/ Robert Herz